UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 14-7049-GW(PLAx) | Date | January 5, 2015 |
|---|---|---|---|
| Title | *Ady Gil, et al. v. Sea Shepherd Conservation Society, et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Daral Blair Mazzarella

Attorneys Present for Defendants:

Paula L. Zecchini
Charles P. Moure

**PROCEEDINGS:** DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 [19, 38]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Plaintiff will have until January 9, 2015 to file their supplemental brief. Defendants' response will be filed by January 15, 2015. Defendants' motion is continued to January 22, 2015 at 8:30 a.m. Parties may appear telephonically provided that notice is given to the clerk two business days prior to the hearing.

:  10

Initials of Preparer  JG

<u>*Gil, et al. v. Sea Shepherd Conservation Soc'y, et al.*</u>, Case No. CV 14-7049 GW (PLAx)
Tentative Rulings on: (1) Defendant Paul Watson's Special Motion to Strike Plaintiffs'
First Amended Complaint Pursuant to California Code of Civil Procedure Section
425.16, and (2) Defendant Sea Shepherd Conservation Society's Special Motion to Strike
Plaintiffs' First Amended Complaint Pursuant to California Code of Civil Procedure
Section 425.16

Defendants Sea Shepherd Conservation Society ("SSCS") and Paul Watson ("Watson" and, together with SSCS, "Defendants") have separately moved, pursuant to California Code of Civil Procedure § 425.16, to strike the First Amended Complaint ("FAC") filed in this action by Plaintiffs Ady Gil ("Gil") and Ady Gil World Conservation ("AGWC" and, together with Gil, "Plaintiffs"). The FAC (attached as Exhibit B to the Notice of Removal filed in this case) presents six claims for relief: 1) libel, 2) trade libel, 3) slander, 4) negligent interference with business relations, 5) intentional interference with business relations, and 6) unfair business practices, California Business and Professions Code § 17200, et seq. The claims are (at least largely) based upon a number of statements Watson made on the "Captain Paul Watson" Facebook page. *See, e.g.*, FAC ¶ 75.

### 1. <u>The Anti-SLAPP Procedure and an Overview of Defendants' Arguments</u>

California's anti-SLAPP procedure – which applies, at least in part, in federal court – is designed to prevent "cause[s] of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech." Cal. Code Civ. Proc. § 425.16(b)(1). "To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013); *see also Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007); *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). "The burden then shifts to the plaintiff...to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261; *see also Equilon Enters.*, 29 Cal.4th at 67.

In opposition to both motions, Plaintiffs concede that the first step in anti-SLAPP analysis is satisfied here. *See* Docket No. 41, at 4:20-22; Docket No. 47, at 5:3-4. The Court has little difficulty in agreeing that the case involves – at least – statements in "a

public forum in connection with an issue of public interest" and speech "in connection with...an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3)-(4); *see also Chaker v. Mateo*, 209 Cal.App.4th 1138, 1146 (2012) (referring to the Internet as "a classic public forum"). This observation applies to every claim alleged. *See* FAC ¶¶ 75, 97, 111-12, 118, 128, 132-33, 136-37, 139, 141. As such, the question is whether, at the second step, Plaintiffs can demonstrate a reasonable probability that they will prevail. *See Chavez v. Mendoza*, 94 Cal.App.4th 1083, 1087 (2001) ("If the defendant makes [a showing that the claims are subject to section 425.16], the burden shifts to the plaintiff to establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor.").

Under the "reasonable probability" of prevailing standard applicable to the second step in California's anti-SLAPP analysis, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Makaeff*, 715 F.3d at 261 (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)); *see also Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1163 (9th Cir. 2011) (indicating that "'probability is a low bar,'" requiring that a plaintiff "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited"); *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010).[1] At the second step, a court does not weigh credibility or compare the weight of evidence; "[r]ather, [it] accept[s] as true the evidence favorable to the plaintiff...and evaluate[s] the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 820 (2011) (omitting internal citations and quotation marks) (citing *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 269 n.3 (2006)).[2]

---

[1] In truth, there are numerous available descriptions of the burden at the second step of the typical anti-SLAPP analysis. *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 598-99 (9th Cir. 2010) (omitting internal citations) (indicating that "reasonable probability" requires "only a 'minimum level of legal sufficiency and triability'" and that the second step of the anti-SLAPP inquiry "is often called the 'minimal merit' prong," requiring a plaintiff only to "state and substantiate a legally sufficient claim"); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) ("[A] defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or 'when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.'").

[2] The Ninth Circuit has not yet cited the California Supreme Court's decision in *Oasis West*. However,

Defendants present a number of reasons why they believe Plaintiffs cannot sustain that second-step burden. Among them (specifically with respect to the claims for libel, trade libel and slander) are that certain of the statements are merely opinions or rhetorical hyperbole, not false statements of fact; those statements that are statements of fact are *true* statements of fact; that claims based upon certain of the statements would be barred by applicable statutes of limitation; that Plaintiffs will be unable to demonstrate actual malice; and that Plaintiffs will not be able to demonstrate actual injury or damage. As to the remaining claims, Defendants argue that Plaintiffs will not be able to satisfy the second step of the anti-SLAPP analysis because the claims are derivative of, and therefore dependent upon, the first three claims; that such claims do not exist under California law; that, to the extent similar claims *do* exist under California law, they are missing key, required elements; and/or that Plaintiffs do not have standing and cannot obtain the only available remedy for such claims. SSCS adds the argument that, even assuming the merits of such claims against Watson, *it* cannot be held responsible for any of his conduct underlying this case.

However, seemingly key to resolution of these motions – or at least Watson's motion – is Plaintiffs' argument that so long as they can satisfy the second-step burden as to *part* of a cause of action, the *entire* cause of action survives. *See, e.g.*, Docket No. 41, at 5:19-22, 12:21-28 (citing *Oasis W.*, 51 Cal.4th at 821 and *Mann v. Quality Old Time Serv., Inc.*, 120 Cal.App.4th 90, 106 (2004)). Indeed, in *Oasis West*, the California Supreme Court made clear that "[i]f the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.'" *Oasis W.*, 51 Cal.4th at 820 (quoting *Mann*, 120 Cal.App.4th at 106); *see also Burrill v. Nair*, 217 Cal.App.4th 357, 383 (2013) (considering only certain alleged defamatory statements for purposes of assessing anti-SLAPP claim).³ In their respective Replies, Defendants take no

---

quoting from *Soukup*, it has recognized the evidentiary "lens" set forth above. *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014).

³ While the Ninth Circuit – again – has not commented on this aspect of the anti-SLAPP procedure as announced in *Oasis West* and *Mann*, at least one reported district court decision has set forth the same rule. *See Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 634 F.Supp.2d 1009, 1018 (N.D. Cal. 2007).

3

issue with the enunciation of this rule, and their motions specifically contemplate the fact that Plaintiffs' claims are based upon *multiple* allegedly defamatory statements. Thus, if Plaintiffs are able to demonstrate a reasonable probability of prevailing with respect to *just one* of the allegedly defamatory statements, claims that are reliant upon that statement (and that suffer from no other defect) will survive this motion.

### 2. The "Animal Killing" Statements

With that in mind, the Court turns directly to Plaintiffs' allegation and evidence concerning the publication, on or about March 16, 2014, that the Animal Advocacy Museum is accepting "an offer by an animal-killing company" and is "cooperating with people who are responsible for killing them," because it is "holding an event in Woodland Hills in [sic] March 29th to be hosted by Ady Gil." FAC ¶¶ 75(d), 97(d), 111-12. The actual evidence of this statement reveals that, as part of a much-longer Facebook post, Watson wrote the following:

> It is ludicrous to think that any self-respecting animal group would take up an offer by <u>an animal killing company</u>. You can't support saving animals by working with and cooperating with <u>people who are responsible for killing them</u>.
> Yet that is just what the Animal Advocacy Museum is doing by holding an event in Woodland Hills in [sic] March 29th to be hosted by Ady Gil.

Declaration of Daral B. Mazzarella, Exh. 3 (Docket No. 41-3) (emphasis added).

Defendants do not attempt to argue that a claim based upon this statement is barred by an applicable statute of limitations. However, they do argue that it is a non-actionable statement, that Plaintiffs cannot demonstrate actual malice in connection with it, and that Plaintiffs cannot demonstrate any injury or damages flowing therefrom.

#### a. Whether the Statements are Actionable
##### i. The Elements of Claims One-Three

As noted previously, Plaintiffs' defamation-based or defamation-related claims in this case are their claims for libel, slander and trade libel. "Under California law, defamation is 'the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.'" *Makaeff*, 715 F.3d at 264 (quoting *Gilbert v. Sykes*, 147 Cal.App.4th 13, 27 (2007)); *see also Sanders v. Walsh*, 219 Cal.App.4th 855, 862 (2013) ("The elements of a defamation

4

claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.") (omitting internal quotation marks) (quoting *Wong v. Jing*, 189 Cal.App.4th 1354, 1369 (2010)). "Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander." *Shively v. Bozanich*, 31 Cal.4th 1230, 1242 (2003).

"Libel is a false and unprivileged publication by writing...which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "To prevail on a claim for libel, plaintiff must show four elements: that defendants published the statements, the statements were about plaintiff; that they were false; and that defendants failed to use reasonable care to determine the truth or falsity." *Grewal v. Jammu*, 191 Cal.App.4th 977, 990 (2011).

"'Slander is a form of defamation, consisting of a false and unprivileged oral publication. To establish a prima facie case for slander, a plaintiff must demonstrate an oral publication to third persons of specified false matter that has a natural tendency to injure or that causes special damage.'" *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal.App.4th 358, 375-76 (2013) (quoting *Mann*, 120 Cal.App.4th 90, 106 (2004)); *Shively*, 31 Cal.4th at 1242 ("A false and unprivileged oral communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander."); Cal. Civ. Code § 46 ("Slander is a false and unprivileged publication, orally uttered...which ...[t]ends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits...or...[w]hich, by natural consequence, causes actual damage.").

"'Trade libel is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner....To constitute trade libel, a statement must be false.'" *City of Costa Mesa*, 214 Cal.App.4th at 376 (quoting *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1010 (2001)). "[D]efamation is distinct from...trade libel: whereas the former 'concerns injury

5

to the reputation of a person or business,' the latter 'involves false disparagement of the quality of goods or services.'" *Total Call Int'l, Inc. v. Peerless Ins. Co.*, 181 Cal.App.4th 161, 169 (2010) (quoting *Mann*, 139 Cal.App.4th at 340). Unlike with some forms of libel or slander, special damages *is* a required element of a trade libel claim. *See Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988); *Astro Music, Inc. v. Eastham*, 564 F.2d 1236, 1238-39 (9th Cir. 1977); *see also* 5 Witkin, Summary of California Law: Torts (10th ed.) § 645, at 951-52 ("Trade libel differs from defamation in that the plaintiff must prove special damages in the form of pecuniary loss….") (omitting internal quotation marks) (quoting *Guess v. Superior Court (Jeff Hamilton, Inc.)*, 176 Cal.App.3d 473, 479 (1986)); 6 Witkin, Summary of California Law: Torts (10th ed.) § 1703, at 1232.

     ii. *Actionable Fact Versus Non-Actionable Opinion*

The Court rejects Defendants' attempt to paint Watson's "animal killing" statements as mere opinion, or as a form of rhetoric or hyperbole[4] that is simply not actionable under California's defamation laws.[5] While courts distinguish between statements of fact and statements of opinion for purposes of defamation liability, "[t]hat does not mean that statements of opinion enjoy blanket protection." *Sanders*, 219 Cal.App.4th at 862 (quoting *Wong*, 189 Cal.App.4th at 1370). "[W]here an expression of opinion implies a false assertion of fact, the opinion can constitute actionable defamation. The critical question is not whether a statement is fact or opinion, but whether a reasonable

---

[4] As an initial matter, the Court does not accord Watson's statements special protection because they occurred on the Internet. *See Bently Reserve L.P. v. Papaliolios*, 218 Cal.App.4th 418, 429 (2013) ("[T]he mere fact speech is broadcast across the Internet by an *anonymous* speaker does not ipso facto make it nonactionable opinion and immune from defamation law.") (emphasis added); *id.* at 431 (indicating that other Internet-based cases finding no defamation "do not preclude the courts from taking serious Internet speech seriously. Internet posts *where the 'tone and content is serious,' where the poster represents himself as* 'unbiased' *and 'having specialized knowledge,'* or where the poster claims his posts are 'Research Reports' or 'bulletins' or 'alerts,' may indeed be reasonably perceived as containing actionable assertions of fact.") (emphasis added); *Batzel v. Smith*, 333 F.3d 1018, 1020 (9th Cir. 2003) ("There is no reason inherent in the technological features of cyberspace why First Amendment and defamation law should apply differently in cyberspace than in the brick and mortar world.").

[5] At least for purposes of this motion, the Court views Defendants as having conceded, and Plaintiffs as having no difficulty demonstrating, the first, third and fourth elements of a defamation claim, as the elements of such a claim have been defined in *Sanders*. The same observation would be made with respect to the first two elements of a libel claim, as defined in *Grewal*. Defendants have not offered any challenge to Plaintiffs' slander claim which differentiates it from their defamation/libel claim.

fact finder could conclude the published statement declares or implies a provably false assertion of fact." *Id.* (omitting internal quotation marks) (quoting *Wong*, 189 Cal.App.4th at 1370). "To determine whether a statement is actionable fact or nonactionable opinion, courts use a totality of the circumstances test of whether the statement in question communicates or implies a provably false statement of fact. Under the totality of the circumstances test, [f]irst, the language of the statement is examined.... Next, the context in which the statement was made must be considered." *Id.* (omitting internal quotation marks) (quoting *McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 113).

Here, the Court does not believe that referring to AGWC as "an animal killing company" or as claiming that Plaintiffs are "people who are responsible for killing [animals]" can be seen as "opinions."[6] Although the "context" of Watson's Facebook post is a much longer rumination on his over-arching dispute with Gil following the damage to, and sinking of, the boat that Gil donated to Defendants' anti-whaling efforts, wherein Watson presents arguments for why he believes Gil has no case against him, the "animal-killing" statements are direct, factual, representations – either Plaintiffs kill animals, or they do not. But even if these statements could be seen as opinions, they clearly at the very least imply assertions of fact. This is a question of law for the Court (although a jury may later determine whether or not the statement should be understood in this manner or, instead, as straight opinion or a fact-turned-into-an-opinion by the rhetoric/hyperbole exception, *see* Footnote 9, *infra*). *See Manufactured Home Commu-nities, Inc. v. Cnty. of San Diego*, 544 F.3d 959, 963 (9th Cir. 2008); *Sanders*, 219 Cal. App.4th at 862-63. Gil has evidenced that these statements of fact are false. *See* Declaration of Ady Gil (Docket No. 41-1[7]), ¶ 8.[8]

---

[6] Defendants do not advance any argument for why AGWC's claims should be treated any differently than Gil's own, other than the blatantly inaccurate (so far as the "animal-killing" statements are concerned) assertion that none of the alleged defamatory statements were "of and concerning" AGWC. *See* Docket No. 38, at 20 n.2. A leading authority on California law states that "[a] corporation may be defamed by matter that has a tendency to injure its *business reputation*, as by deterring persons from dealing with it," 5 Witkin, Summary of California Law: Torts (10th ed.) § 532, at 784, and that "[a] nonprofit corporation that relies on financial support from the public may likewise be defamed by something that prejudices it in the estimation of the public," *id.* As such, if the Court concludes that any of the claims survive this motion, they will survive for both AGWC and Gil.

[7] In referencing evidence contained within Gil's Declarations submitted in connection with the two motions, the Court cites only to Docket Number 41-1 herein, though Docket No. 40-5 contains the same evidence.

In his brief in support of his motion, Watson gives a further explanation of what he was perhaps trying to convey by making these factual statements. He (rather, his attorney) writes:

> Watson obviously views Gil's demand for $50 million as an attempt at financially ruining SSCS, which, if granted, would effectively kill the organization Watson founded and with it, the marine wildlife SSCS would otherwise be protecting. In that way, Watson sees Gil as one and the same with the whalers, sealers, and poachers SSCS opposes. Watson's "animal killer" comment is just an expansion upon the same theme, taken to an extreme, hyperbolic conclusion – because Gil's suit threatens the viability of SSCS, it indirectly results in the death of animals – thus, Gil is an "animal killer."

Docket No. 38, at 13:27-8. If Watson had written all of *that* in his Facebook post, we might very well be facing a different case. But he did not.[9] He made the straight seemingly-factual representation that Plaintiffs were "an animal killing company" and "people who are responsible for killing [animals]" (*after* having *prefaced* those statements by references to SeaWorld and Tyson Chicken). See Docket No. 41-3, Exh. 3.

b. <u>Is Actual Malice Required? Have Plaintiffs Sufficiently Shown It?</u>

---

[8] The Court overrules SSCS's objection to this paragraph to the extent it concerns the "animal-killing" statements. *See* Docket No. 43-2.

[9] The closest Watson came is – several paragraphs after the "animal-killing" comments – his statements that 1) "Ady Gil is spending tens of thousands of dollars to pursue [the lawsuit] and that is forcing Sea Shepherd to spend funds to defend the organization from the suit. When I asked him why he was doing this because he does not need the money, he said it was not about money, it's about destroying Sea Shepherd and myself," and – again, several paragraphs later – that 2) "Sea Shepherd Conservation Society has important campaigns to run, to protect dolphins, whales, seals, sharks, fish, sea-birds and marine eco-systems. We cannot afford to divert money to defending ourselves from frivolous lawsuits." Docket No. 41-3, Exh. 3. These statements – perhaps unlike those his attorneys now offer in his briefing – do not provide sufficient context for the Court to conclude, as a matter of law, that Watson's statements are opinions, or – to the extent Defendants refer to these particular statements as such, *see* Docket No. 38, at 15:2-7 and Docket No. 19, at 15:19-23 – rhetorical hyperbole, or that Watson's audience necessarily would have understood his statements in the fashion he now says he intended. *See Rudnick v. McMillan*, 25 Cal.App.4th 1183, 1191-92 (1994) ("[W]here potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.") (omitting internal quotation marks) (quoting *Gregory v. McDonnell Douglas Corp.*, 17 Cal.3d 596, 601 (1976)); *Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 261 (1986) ("[The publication] must be read as a whole in order to understand its import and the effect which it was calculated to have on the reader, and construed in the light of the whole scope and apparent object of the writer, considering not only the actual language used, but the sense and meaning which may have been fairly presumed to have been conveyed to those who read it.") (quoting *Scott v. McDonnell Douglas Corp.*, 37 Cal.App.3d 277, 291 n.11 (1974)). Nor does the Court believe that the Facebook post in its entirety is a sufficient *revelation* of the *facts* underlying Watson's purported "opinions" to make the statements non-actionable on that basis.

However, the Court agrees with Defendants that Plaintiffs must demonstrate actual malice in order to prevail on a defamation-based claim founded on these statements. Yet, at the same time, the Court believes that Plaintiff will be able to do so, at least under the procedural rules applicable at this stage.

Where the subject of an allegedly defamatory statement is a "limited public figure,"[10] the plaintiff must demonstrate by clear and convincing evidence that the statement was made with "actual malice." *See Makaeff*, 715 F.3d at 265-66, 270; *Manufactured Home*, 655 F.3d at 1177. A limited-purpose public figure "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). If a court determines that a person is a limited purpose public figure, it must ask "for what limited purposes?" *Annette F. v. Sharon S.*, 119 Cal.App.4th 1146, 1163 (2004). "[S]uch a determination is often a close question which can only be resolved by considering the totality of the circumstances which comprise each individual controversy." *Id.* (quoting *Readers Digest Ass'n v. Superior Court (Synanon Church)*, 37 Cal.3d 244, 255 (1984)). In deciding whether Plaintiffs are limited purpose public figures, courts "consider whether (i) a public controversy existed when the statements were made, (ii) whether the alleged defamation is related to the plaintiff's participation in the controversy, and (iii) whether the plaintiff voluntarily injected itself into the controversy for the purpose of influencing the controversy's ultimate resolution." *Makaeff*, 715 F.3d at 265-66.

In an attempt to avoid the limited public figure designation, Plaintiffs would have the Court define the public controversy here as the litigation between the parties that is now proceeding in arbitration. But with respect to the particular allegedly defamatory statements at issue here – the "animal-killing" statements – the Court views the "public controversy" at issue more broadly. Watson commented, at that point in his statement, on the incongruity he perceived in having Plaintiffs associated with an animal group's event. The appropriate "public controversy," then, should be defined much more broadly – animal-advocacy or animal-protection in general. Plaintiffs' own allegations are in accord. *See, e.g.*, FAC ¶ 119 ("[The statements] imply a false factual assertion that GIL does not

---

[10] Because the Court concludes that Plaintiffs are, at the very least, limited public figures, it has no need to analyze whether they are public figures for all purposes.

care for animals and is, in fact, not an animal rights proponent or activist."). That controversy – perhaps at its pinnacle in the pro- and anti-whaling efforts involved in the underlying facts here – is certainly "a real dispute, the outcome of which affects the general public or some segment of it," and therefore qualifies as a public controversy *Makaeff*, at 267.

Using that public controversy as the touchstone, the Court has no difficulty in concluding that it existed at the time Watson made his statements, that the "animal-killing" statements were related to the propriety of Plaintiffs' role(s) in the controversy, and that Plaintiffs have voluntarily injected themselves into the controversy for the purpose of influencing its ultimate resolution. *See id.* at 266. Plaintiffs themselves acknowledge that "[a] person becomes a public figure[] for a limited purpose if he is attempting to have, or realistically can be expected to have, a major impact on the resolution of a specific public dispute that has foreseeable and substantial ramifications for persons beyond its immediate participants." Docket No. 41, at 14:21-24; Docket No. 47, at 12:11-14. Watson's comments concerned whether Plaintiffs were appropriately associated with the animal-protection movement, a movement that Plaintiffs unquestionably voluntarily attempted to take part in and influence. *See* Gil Decl. (Docket No. 41-1), ¶ 2 ("The primary function of ADY GIL WORLD CONSERVATION is advancement of animal rights. I devote a substantial amount of my time, energy, and financial resources to protecting animal rights and acting as an animal-rights activist.")[11]; *id.* ¶ 8; Declaration of Paula Zecchini (Docket No. 19-1), Exhs. A-L (Docket No. 19-2); Declaration of Rebecca Millican (Docket No. 19-3), ¶ 7; *id.*, Exh. E (Docket No. 19-4); FAC ¶¶ 2, 30; *see also, e.g., Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998) ("There is a strong argument that Newcombe is subject to the more rigorous constitutional standard because he is either an all-purpose public figure based on his baseball fame, or at least a limited public figure because he voluntarily thrust himself into the public issue of the anti-alcohol movement."); *McGarry*, 154 Cal.App.4th at 115 ("McGarry voluntarily entered the public arena as a college football coach, and the statements dealt exclusively with his performance of the public role he voluntarily undertook.").

As such, Plaintiffs must demonstrate actual malice in order to prevail. Actual

---

[11] The Court overrules SSCS's objection to the part of this statement referenced in Docket No. 43-2.

malice requires a showing that the statements were made with knowledge of their falsity or reckless disregard of their truth. *See Makaeff*, 715 F.3d at 270. "To demonstrate reckless disregard of the truth, [Plaintiffs] must show by clear and convincing evidence that [Watson] 'entertained serious doubts as to the truth' of [his] statements." *Id.* (quoting *Gertz*, 418 U.S. at 331-32, 334 n.6; *see also Young v. CBS Broad., Inc.*, 212 Cal.App.4th 551, 563 (2012) ("[W]e have made clear that the defendant must have made the false publication with a 'high degree of awareness of...probable falsity,' or must have 'entertained serious doubts as to the truth of his publication.'") (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) and *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Evidence of negligence, motive, intent, a failure to investigate, or anger and hostility toward a plaintiff can, in an appropriate case, indicate that the publisher had serious doubts regarding the truth of his publication, but "only to the extent that it reflects on the subjective attitude of the publisher." *See Young*, 212 Cal.App.4th at 563 (quoting *Readers Digest*, 37 Cal.3d at 257-58). *But see cf. McGarry*, 154 Cal.App.4th at 114 ("This [subjective] test directs attention to the defendant's attitude toward the truth or falsity of the material published[,]...[not] the defendant's attitude toward the plaintiff.") (omitting internal quotation marks) (quoting *Widener v. Pac. Gas & Elec. Co.*, 75 Cal.App.3d 415, 434 (1977)). "[T]o support a finding of actual malice, the failure to investigate must fairly be characterized as demonstrating the speaker purposefully avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the probable falsity of charges." *McGarry*, 154 Cal.App.4th at 114. However, at the anti-SLAPP stage of a case, a plaintiff need not actually establish malice by clear and convincing evidence, but instead must only "establish a reasonable probability that she can produce clear and convincing evidence showing that the statements were made with actual malice." *Young*, 212 Cal.App.4th at 563; *see also Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1578 (2005); *Metabolife*, 264 F.3d at 846-47; *id.* at 860 (Rymer, J., concurring and dissenting). *But see Sipple v. Found. for Nat'l Progress*, 71 Cal.App.4th 226, 248-50 (1999) (applying clear and convincing evidence standard to malice question in context of anti-SLAPP challenge).

    The Court believes that Plaintiffs have satisfied this requirement at the anti-SLAPP stage. Watson's Facebook posts and other evidence demonstrates motive, intent, anger and

hostility running from Watson to Plaintiffs. *See, e.g.*, Gil Decl. ¶¶ 10, 15[12], 16; Mazzarella Decl., Exh. 5 (reflecting Watson's declaration of "war" on Gil). Furthermore, Watson makes no effort whatsoever to cite *any* factual basis for making his "animal-killing" comments. In fact, in his motion he *admits* to the fact that he was attempting to make the statements *figuratively*, thereby in essence acknowledging that he had no factual basis whatsoever for the factual contentions. While Defendants may have hoped that such a strategy would have helped them avoid the conclusion that the statements were actionable in the first place, failing that goal leaves them more vulnerable to an actual malice showing. For purposes of the anti-SLAPP motion, the Court concludes that Plaintiffs have established a reasonable probability that they can produce clear and convincing evidence showing that the "animal-killing" statements were made with actual malice.

    c. Special Damages

Finally, with respect to their libel and slander claims, the Court concludes that there would be no need for Plaintiffs to demonstrate special damage in connection with the "animal-killing" statements.

"A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face," or libel *per se*. *Barnes-Hind, Inc. v. Superior Court (Allergan Pharms., Inc.)*, 181 Cal.App.3d 377, 381-82; Cal. Civ. Code § 45a. Where a plaintiff can make out libel *per se*, it need not prove special damages. *See Barnes-Hind*, 181 Cal.App.3d at 382. Here, Watson stated that Plaintiffs, who were hosting an event for the Animal Advocacy Museum, were, in fact, "an animal killing company" and "people who are responsible for killing" animals. *See* Docket No. 41-3, Exh. 3. From those particular statements alone,

---

[12] In paragraph 15, Gil recounts the statement of SSCS's major Donations Director, Farah Smith, informing Gil "that Watson posted the false statements because he was 'pissed off' at me for filing a lawsuit to obtain compensation for the intentional destruction of a boat." Gil Decl. (Docket No. 41-1), ¶ 15. The Court need not consider whether or not that evidence would constitute hearsay (and it has not been established that it would be protected by any settlement privilege), *see* Docket No. 43-2, in light of the approach to actual malice evidence at the anti-SLAPP stage enunciated in *Young*, 212 Cal.App.4th at 563. *But see generally Gilbert v. Sykes*, 147 Cal.App.4th 13, 26 (2007) (stating in case requiring actual malice showing that "declarations that lack foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory are to be disregarded."); *Greater Los Angeles Agency*, 742 F.3d at 422 (stating, in non-defamation context, that the burden shifts, at the second step of anti-SLAPP analysis, to the plaintiff to prove "by competent evidence" a probability of prevailing). In any event, no matter the correct resolution of the seemingly disparate approaches to the evidentiary question taken by cases such as *Young* and *Gilbert*, Smith's alleged statement is not the only evidence on this point.

therefore, a "reasonable reader would perceive...a meaning which tended to injure [Plaintiffs'] reputation." *Barnes-Hind*, 181 Cal.App.3d at 386; *see also* 5 Witkin, Summary of California Law: Torts (10th ed.) § 543, at 796 ("[I]t is sufficient if [the publication] so reflects on the person's integrity as to bring him or her into disrepute."). A reader "would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense." *Barnes-Hind*, 181 Cal.App.3d at 386-87; *see also* 5 Witkin, Summary of California Law: Torts (10th ed.) § 541, at 794-95. And if a reader could consider those particular words *as they were surrounded by the Facebook post as a whole*, this conclusion would only be cemented further. *See, e.g., Hawran v. Hixson*, 209 Cal.App.4th 256, 290 (2012) ("[R]eading the targeted statements in the entire context of the September press release, their defamatory meaning is plain on the face of the document, and thus [proof of injury to his reputation with admissible evidence] is unnecessary."); *Boyich v. Howell*, 221 Cal.App.2d 801, 802 (1963) ("The average lay reader of *the entire circular* could well view the charged conviction of union ballot box stuffing as asserting conviction of crime, concededly a libel on its face.") (emphasis added).

As for slander, no proof of actual damages is required where the slander "[t]ends directly to injure [a plaintiff] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits." Cal. Civ. Code § 46; *Regalia v. Nethercutt Collection*, 172 Cal.App.4th 361, 367 (2009). This is a question for the Court, *see Regalia*, 172 Cal.App.4th at 368, and the Court has little difficulty in concluding that referring to Gil and AGWC – who fashion themselves as animal-rights activists or, at the very least, friends to the animal-rights community, *see, e.g.*, Gil Decl. (Docket No. 41-1), ¶¶ 2-3[13] – as "animal killers" or "responsible for killing" animals qualifies. *See also Burrill*, 217 Cal.App.4th at 383 (indicating that "while libel per se is not...limited [to the four categories of slander per se], courts have held [those] categories of defamatory statements to also constitute libel per se").

---

[13] The Court overrules SSCS's objections to these paragraphs. *See* Docket No. 43-2.

As such, Plaintiffs have satisfied the second step of the anti-SLAPP analysis with respect to at least their libel and slander claims. However, unlike with respect to libel *per se* and slander *per se*, trade libel requires pecuniary loss. "A plaintiff suing for trade libel may not rely on a general decline in business to show pecuniary loss from the alleged falsehood, but must instead identify *particular customers and transactions* of which it was deprived as a result." 5 Witkin, Summary of California Law: Torts (10th ed.) § 646, at 953 (emphasis added); *see also Mann*, 120 Cal.App.4th at 109. On this point, Plaintiffs have come up short, *see generally* Gil Decl. (Docket No. 41-1), ¶¶ 6, 9, 11, 13-14,[14] and that deficiency is true no matter which of the various alleged defamatory statements the Court considers. As a result, the Court would grant both anti-SLAPP motions insofar as they concern Plaintiffs' trade libel claims.

### 3. The Remaining Claims

Defendants have offered arguments on Plaintiffs' three remaining claims – for "negligent interference with business relations," "intentional interference with business relations," and unfair business practices pursuant to California Business and Professions Code § 17200, et seq. – that Plaintiffs' opposition papers completely or effectively ignore. At least as to claims four and five, those arguments are grounds for claiming that those claims would fail as a matter of law, irrespective of the outcome of the defamation-based claims. Given Plaintiffs' failure to even address them, the Court is of the opinion that this is the appropriate conclusion here, and that claims four and five – like claim three – should be stricken. Claim six, however, will survive.

#### a. "Negligent Interference with Business Relations"

Because of their – uncontested by Plaintiffs – contention that there is no such claim as "negligent interference with business relations," *see Davis v. Nadrich*, 174 Cal.App.4th 1, 9 (2009), Defendants presume – again, without a debate on the point from Plaintiffs – that the fourth claim in the FAC is actually an attempt to assert a claim for negligent interference with prospective economic advantage. With respect to that claim, Defendants argue that Plaintiffs cannot demonstrate a probability of prevailing both because they argue only that Watson acted intentionally here and because Plaintiffs cannot establish the

---

[14] Because of this conclusion, the Court need not resolve the evidentiary objections to these paragraphs of Gil's Declaration. *See* Docket No. 43-2.

existence of any duty running from Defendants to Plaintiffs.

At a minimum, Plaintiffs have made no attempt to argue the existence of a duty of care, or to cite to any case recognizing a duty in similar circumstances. The Court therefore concludes that Plaintiffs have not demonstrated a reasonable probability of prevailing on the claim. The Court grants the motions as to this claim.

### b. "Intentional Interference with Business Relations"

With respect to this claim, Defendants again first note that there is no such claim under California law, and presume that Plaintiffs are attempting to make out claims for either tortious interference with contract and/or intentional interference with prospective economic advantage. Again, Plaintiffs offer no retort on either of these points.

Working from that assumption, Defendants then argue that Plaintiffs cannot demonstrate a reasonable probability of prevailing because they have not identified any contractual relationship breached or disrupted as a result of Watson's statements, or even interference with an existing business relationship, which are requirements, respectively, of the two claims Defendants presume Plaintiffs are trying to make out here. *See Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219, 1239 (2003); *Roth v. Rhodes*, 25 Cal.App.4th 530, 546 (1994). Indeed, Plaintiffs' evidence fails in these respects. *See generally* Gil Decl. (Docket No. 41-1), ¶¶ 6, 9, 11, 13-14. The Court therefore grants the motions as to the two claims.

### c. California Business and Professions Code § 17200

While Defendants present arguments for why this claim must be stricken at this stage as well, they do not cover a situation where at least one basis for Plaintiffs' defamation-based claims survives this motion.[15] Insofar as the Court has concluded that such claims would survive, the Court would deny Defendants' motion as to this claim

### 4. SSCS's Responsibility for Any Surviving Claims

If, as set forth above, claims one, two and six survive the anti-SLAPP stage due to Plaintiffs' reasonable probability of prevailing against at least Watson, the Court must then

---

[15] Defendants' *properly-raised* (the Court will not grant the motion based on arguments raised for the first time in Reply, *see* Docket No. 43, at 16:2-3) arguments that are not based on the reasons they believe Plaintiffs' defamation-based claims are wanting are that 1) Plaintiffs do not have standing to assert claims based on conduct directed at Plaintiffs' unidentified supporters and 2) injunctive relief is not available to enjoin speech that has not yet occurred. But the "animal-killing" statements were directed, at least in part, at and about Plaintiffs, and it is not "speech that has not yet occurred."

determine whether SSCS nevertheless should prevail on *its* motion because it was not responsible for any of the alleged statements and Plaintiffs therefore could not demonstrate a reasonable probability of prevailing against it. The basic element at issue here is really whether SSCS can be held responsible as a *publisher* of the statements in question.

> The general rule for defamation is that only one "who takes a responsible part in the publication is liable for the defamation." For example, the business manager of a foreign newspaper was not liable where there was no evidence that he had control over the editorial staff and it was undisputed that he had no knowledge of the preparation or content of the subject articles until after publication.

*Matson v. Dvorak*, 40 Cal.App.4th 539, 549 (1995) (omitting internal citations) (quoting *Osmond v. EWAP, Inc.*, 153 Cal.App.3d 842, 852 (1984) and citing *Sakuma v. Zellerbach Paper Co.*, 25 Cal.App.2d 309, 321-22 (1938)). Plaintiffs do not attempt to argue or evidence that SSCS published any of the statements itself, and the evidence SSCS submits indicates otherwise. See Declaration of Susan Hartland (Docket No. 19-5), ¶¶ 2-5. Instead, the question of whether Plaintiffs have a reasonable probability of prevailing against SSCS on *any* claim comes down to whether SSCS can be held liable by virtue of an *agency* theory.

*Respondeat superior* liability for defamation by an employee or agent *is* recognized under California law. See 3 Witkin, Summary of California Law: Agency (10th ed.) § 185, at 235-37; *see also Davis v. Hearst*, 160 Cal. 143, 161-62 (1911) ("[T]he publisher of a libel is responsible for compensatory damages, even if the libel be published without his knowledge and against his will or assent, if so published by his authorized agents or employees."); *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 (1982) ("[I]f an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement."); *Batzel v. Smith*, 333 F.3d 1018, 1035-36 (9th Cir. 2003). The Court has not been able to locate any reported case explicitly examining an apparent or "ostensible" authority-based agency relationship (the type of agency relationship Plaintiffs advance here) in the anti-SLAPP context. However, one Ninth Circuit decision may demonstrate the futility of Plaintiffs' case against SSCS.

In *Batzel*, a plaintiff sued a manufacturer of security devices for defamation under an agency theory because it had given another defendant – the operator/moderator of a

listserv and website – $8,000 for displaying its logo and other advertisements on the listserv and website. *See Batzel*, 333 F.3d at 1021-23. The manufacturer prevailed (though as the result of a summary judgment motion, not an anti-SLAPP motion). *See id.* at 1023, 1035. The Ninth Circuit first observed that "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Batzel*, 333 F.3d at 1035 (quoting Restatement (Third) of Agency § 1.01 (Tentative Draft) and citing *Desuza v. Andersack*, 63 Cal.App.3d 694, 699 (1976)).

Seemingly crucially, it then stated that "[i]n order for [the manufacturer] to be held vicariously liable for the torts of [the listserv/website operator/moderator] on a theory of agency, [the manufacturer] must have had the ability to control [the listserv/website operator/moderator's] activities." *Batzel*, 333 F.3d at 1035; *id.* at 1036 ("Without the element of control, Batzel's vicarious liability argument fails."); *see also Desuza*, 63 Cal.App.3d at 699 ("The right of the alleged principal to control the behavior of the alleged agent is an essential element which must be factually present in order to establish the existence of agency...."); *cf. Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1035 n.18 (9th Cir. 2008) (stating, in context of examining malice for purposes of malicious prosecution claim, "[t]he ad itself is silent as to Interscope and, presumably, for Interscope to be liable the Tuckers would have to show that Interscope was directly involved in the ad, or that Interscope, as the exclusive distributor of Death Row's music, managed and controlled Death Row to the extent that Death Row was a mere agent or instrumentality of Interscope"). The court concluded that "[t]he fact that [the manufacturer] provided [the listserv/website operator/moderator] with financial support does not support an inference that [the manufacturer] possessed practical control of [the listserv/website operator/moderator's] editorial content." *Batzel*, 333 F.3d at 1036; *see also Matson*, 40 Cal.App.4th at 549. Certainly, like *Batzel*, there is no evidence of SSCS's "control" over Watson's statements on his Facebook page.

Having not dealt with *Batzel* in their own brief, how Plaintiffs would respond to it is uncertain. Perhaps they might argue that the Ninth Circuit was considering an "actual authority" agency theory (though that is not entirely clear). Even still, the Court likely

would conclude that Plaintiffs have not demonstrated a probability of prevailing against SSCS by way of an apparent agency theory.

It is true that "[a]n agent's authority may be proved by circumstantial evidence." *Gaine v. Austin*, 58 Cal.App.2d 250, 261 (1943). Apparent, or ostensible, authority, stems "from conduct of *the principal* which leads the third party reasonably to believe that the agent is authorized to bind the principal." *Mannion v. Campbell Soup Co.*, 243 Cal.App.2d 317, 320 (1966) (emphasis added); *see also Ermoian v. Desert Hosp.*, 152 Cal.App.4th 475, 502 (2007).

> Before recovery can be had against the principal for the acts of an ostensible agent, the person dealing with an agent must do so with belief in the agent's authority and this belief must be a reasonable one. Such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be guilty of neglect.

*Ermoian*, 152 Cal.App.4th at 502 (omitting internal quotation marks) (quoting *Hartong v. Partake, Inc.*, 266 Cal.App.2d 942, 960 (1968)).

None of the evidence of agency that Plaintiffs point to in connection with SSCS's purported liability for the statements in question involves any demonstration of agency *in connection with the actual statements involved here*, other than Watson's use of SSCS's Jolly Roger and logo on his personal website. *See* Docket No. 47, at 17:23-23:19. Of course, the same evidence was present in *Batzel*, and that made no difference to the Ninth Circuit's decision. Insofar as SSCS's arguable "neglect" in allowing Watson use of those symbols on his personal website is the only evidence of any "conduct" by SSCS in connection with the actual statements at issue here, this would likely be insufficient for the Court to conclude that Plaintiffs had carried their second-step anti-SLAPP burden.[16]

Because the evidence Plaintiffs have proffered comes up short in demonstrating even apparent authority with respect to Watson's statements on his Facebook page, the Court concludes that SSCS's anti-SLAPP motion should be granted in its entirety.

### 5. Conclusion

The Court grants SSCS's motion in its entirety. It also grants Watson's motion

---

[16] The parties have not addressed whether the final sentence of paragraph 15 of Gil's Declaration (Docket No. 41-1) would be a basis for SSCS's liability. To this point, that certainly has not been the direction of this litigation. Though she was originally named as a defendant in the action, Farah Smith was removed as such when Plaintiffs filed the FAC.

insofar as Plaintiffs' claims for trade libel, negligent interference with business relations, and intentional interference with business relations are concerned. It otherwise denies Watson's motion.